# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JUNE A. TRZCINKA,**

    **Plaintiff,**

**v.**                 **Case No:   6:15-cv-1055-Orl-31DCI**

**ARMANDO RAMIREZ,**

    **Defendant.**

_____

## ORDER

This matter is before the Court without a hearing on the Motion for Summary Judgment (Doc. 44) filed by the Defendant, Armando Ramirez in his official Capacity as Clerk of the Circuit Court of Osceola County, Florida; and the Response in Opposition (Doc. 46) filed by the Plaintiff, June A. Trzcinka.

## I. Background

Ramirez is the Clerk of the Circuit Court of Osceola County, an elected position he has held since January, 2013. Trzcinka worked for the Clerk's Office as a criminal cashier for approximately five years. Throughout her employment with the Clerk's Office, Trzcinka was scheduled to work from 8:00 AM to 5:00 PM. Her job description required her to "maintain and be responsible for $100 initial bank, cash bags, drawer key, cash bag keys, and hand receipt books;" and for "daily balancing money received with reports generated." Doc. 44-A. In order to perform these duties, Trzcinka regularly clocked in prior to 8:00 AM and clocked out after 5:00 PM. According to the Clerk's policy, employees were to clock in no earlier than 7:53 AM and out no later than 5:07 PM. This was considered "grace time" for which employees were not paid.

On March 19, 2015, Lisa Cubero from the Clerk's human resources department sent an email to Trzcinka announcing a new position. Trzcinka responded questioning why the position required experience and was offered to current employees, whereas other better-paying positions were filled by unexperienced new-hires without ever being posted. Lisa responded stating that the Clerk's hiring practices varied according to need and provided the official policy behind said hiring practices.

Beginning in late 2014 or early 2015, the Clerk's office hired a contractor to organize volunteers to hand out Clerk of Courts information at community events on their days off. On March 24, 2015, the employees were informed that working at these events would no longer be voluntary and that employees would receive one hour compensatory time for every one hour worked at these events. On the same day and at a staff meeting held by the department manager, Sarah Brown, Trzcinka objected to the new policy, stating that it was unfair and that she was "not going to do it, let them fire" her. Doc. 44-B at 31.

On March 26, 2015, Sarah Brown called Trzcinka into her office and presented Trzcinka with a written warning for insubordination regarding her comments at the meeting. On the written warning, Trzcinka recorded her own thoughts in response: "Truth hurts. Unfair Business Practices of hourly employees. Why hold a department meeting if department employees cannot express their feelings?" Doc. 44-G. On March 30, 2015, Trzcinka was terminated.

Trzcinka's claims fall into two categories: (1) violations of the Fair Labor Standards Act (hereinafter the "FLSA") due to the Clerk's failure to compensate her for overtime worked; and (2) violation of the Florida Whistle-Blower's Act (hereinafter the "FWA").

## II.      Legal Standard

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Emp't Servs., Inc.*, 252 F. Supp. 2d 1347, 1351–52 (M.D. Fla. 2003). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson,* 477 U.S. at 255.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324–25 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324–25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value") (citations omitted); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

## III.     Discussion

### A.     The Fair Labor Standards Act

An employee who has worked overtime without pay may bring a private FLSA action for damages. 29 U.S.C. § 216(b). "An unpaid-overtime claim has two elements: (1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime work." *Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 801 (11th Cir. 2015). In his motion, Ramirez does not dispute that Trzcinka worked unpaid overtime or whether he knew about it; rather, he argues that any claim based on post-shift work performed by Trzcinka is barred by the statute of limitations, and that any extra work required of Trzcinka outside of her scheduled shift was *de minimis*.

### 1.     Statute of Limitations

Typically, the statute of limitations for an FLSA claim is two years, however, if it is shown that the employer has committed a willful violation of the Act, the statute of limitations is increased to three years. 29 U.S.C. § 255(a). Under the FLSA, an employer's act is willful if it "knew or showed a reckless disregard for the matter of whether its conduct was prohibited." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

Here, it was the Clerk's policy that employees "have an established seven (7) minute grace period for rounding time-in and time-out." Doc. 44-K. Trzcinka argues that, under this policy, employees could clock in as early as 7:53 AM and clock out as late as 5:07 PM, but would not get paid for the extra fourteen minutes of work. This policy was established even though the criminal cashier job description required that cashiers work before and after their shifts. According to the job description, employees were required to arrive early to set up their cash drawer and be prepared to call on customers at 8:00 AM "sharp." Doc. 46-1. Additionally, after their shift ended at 5:00 PM,

cashiers were required to balance their cash drawers, run a close out report, add checks with an adding machine, and validate said reports with management. *Id.*

Clearly, if the grace-time policy was designed to circumvent the FLSA, facts exist that support Trzcinka's claim that the Clerk willfully violated the Act. Thus, there is a genuine issue as to whether the statute of limitations has run on Trzcinka's post-shift compensation claims.

### 2.     The *De Minimis* Exception

Under the *de minimis* exception, employers are not required to compensate employees for work that "concerns only a few seconds or minutes . . . beyond the scheduled working hours." *Brantley v. Ferrell Elec., Inc.*, 112 F. Supp. 3d 1348, 1372 (S.D. Ga. 2015) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946)). "When applying the *de minimis* rule to otherwise compensable time, the following considerations are appropriate: (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Brantley*, 112 F. Supp. 3d at 1372.

As indicated above, the record shows that the Clerk required that criminal cashiers, such as Trzcinka, regularly perform pre-shift and post-shift work as part of their daily, job-related duties. Doc. 46-1. The practical administrative difficulty of recording this time would likely be minuscule, considering employees were allowed to clock in during the seven minutes before and after their shift. Additionally, the aggregate amount of the time worked could easily exceed one extra hour per week. In light of the three factors from *Brantley*, there are facts supporting a conclusion that the extra time Trzcinka was required to work was not *de minimis*.[1] 112 F. Supp. 3d at 1372.

---

[1] Ramirez also argues that some of Trzcinka's FLSA claims related to compensatory time fail because the Clerk did not use compensatory time as an overtime substitute—when employees were required to work in excess of their eight hour shift, their time was "flexed." However, the record is unclear as to whether Trzcinka's time was ever "flexed."

Therefore, the Clerk's Motion for Summary Judgment will be denied as it relates to Trzcinka's FLSA claims—Counts III–VIII.

**B.     The Florida Whistle-Blower's Act**

To state a claim for retaliation under the FWA,[2] a plaintiff must allege that: "(1) the plaintiff engaged in statutorily protected expression; (2) the plaintiff suffered an adverse employment action; and (3) there is some causal connection between the two events." *Rustowicz v. N. Broward Hosp. Dist.*, 174 So. 414 (Fla. Dist. Ct. App. 2015) (citing *Fla. Dep't of Children & Families v. Shapiro*, 68 So. 3d 298, 305–06 (Fla. Dist. Ct. App. 2011)). Here, Trzcinka clearly suffered an adverse employment action via her termination and the temporal relationship between her statements and termination raise a strong inference that the two are causally connected. *See Brungart v. BellSouth Tellecomms., Inc.*, 231 F.3d 791, 798–99 (11th Cir. 2000); Doc. 44 at 8. Therefore, all that remains is whether her statements were statutorily protected expression.

Statements are protected by the FWA when they disclose:

> (a) Any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency . . . which creates and presents a substantial and specific danger to the public's health, safety, or welfare.
>
> [Or]
>
> (b) [a]ny act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, . . . or gross neglect of duty committed by an employee or agent of an agency or independent contractor.

---

[2] FLA. STAT. §§ 112.3187–112.31895.

FLA. STAT. § 112.3187(5). Gross mismanagement is defined as "a continuous pattern of managerial abuses, wrongful or arbitrary and capricious actions, or fraudulent or criminal conduct which may have a substantial adverse economic impact." *Id.* § 112.3187(3)(e).

When a disclosure concerns a local government entity, such as here, "the information must be disclosed to a chief executive officer . . . or other appropriate local official." *Id.* § 112.3187(6). For the purposes of the FWA, "other appropriate local official[s]" are those "who [are] affiliated with the violating governmental entity and [have] the authority to investigate, police, manage, or otherwise remedy the violation or act by the violating governmental entity." *Rustowicz*, 174 So. 3d at 424.

The undisputed facts show that Trzcinka made two possible disclosures: (1) the March 19, 2015, email to human resources; and (2) the message she wrote on the March 26, 2015, written warning. In her email, Trzcinka inquired as to why some positions were posted requiring experience, whereas some others were filled by inexperienced new-hires without first being offered to current employees. There was nothing in Trzcinka's email that could be construed as disclosing any violation or suspected violation of law, or any act or suspected act of gross mismanagement. Trzcinka expressed frustration concerning the lack of better paying opportunities and asked a question, to which human resources provided an answer and official policy supporting said answer. The email is merely a routine office communication and, as such, is not a disclosure under the FWA as a matter of law.

As far as Trzcinka's message written on the "Employee Warning Notice:" Trzcinka wrote "Truth Hurts. Unfair Business Practices for hourly employees. Why hold a department meeting if department employees cannot express their feelings?" Doc. 44-G. The notice that her statement was written on indicated that she had been given a written warning because of the objections she made

at the March 24, 2015, department meeting—the meeting where employees were informed that weekend, community events were no longer voluntary, and that employees who worked the events would be given compensatory time at an hourly rate of one-to-one. As such, it can be inferred that her statement disclosed her suspicion that the mandated, one-to-one compensatory time violated the law—or more specifically, the FLSA. *See* 29 U.S.C. § 207(o) ("Employees of a public agency . . . may receive . . . compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.").

Additionally, Trzcinka's message was reported to the appropriate local authority. The message was written immediately below the signature lines for her manager, administrator, director, and Ramirez himself. Doc. 44-G. Even assuming *arguendo* that the other three signatories on the document were not "other appropriate officials" within the FWA, Ramirez is the chief executive officer of the Clerk of the Circuit Court of Osceola County. *See* FLA. STAT. §§ 112.3187(6), 447.203(9). As such, considering all inferences drawn from the underlying facts in a light most favorable to Trzcinka, there are facts that support an FWA claim.

It is therefore **ORDERED** that the Defendant's Motion for Summary Judgment (Doc. 44) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 3, 2016.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party